UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re:                                                                    Bankr. Case No. 03-12077
    WILLIAM C. HALPIN, JR.,                              Chapter 7

                  Debtor.
_____

DONALD RAHM, LAWRENCE SPRARAGEN,
JOSEPH GROSS, PHILIP PACIFICO,
VINCENT J. DALY, and DONALD HART

                  Plaintiff-Appellants,

   -against-                                                   Dist. Ct. Case No. 1:06-CV-1034/
                                                    Dist. Ct. Case No. 1:06-CV-1097
                                                    (LEK)

WILLIAM C. HALPIN, JR.,

                  Debtor-Appellee.
_____

**MEMORANDUM-DECISION AND ORDER**[1]

**I. Background**

     This matter comes before the Court on appeal from the United States Bankruptcy Court, Northern District of New York. Plaintiff-Appellants, members of the International Brotherhood of Electrical Workers Local 236 ("Plaintiff-Appellants" or the "Union") and trustees of various benefit funds[2] (the "Benefit Funds") of which the Union is a participant, filed an objection to the dischargeability of certain debt pursuant to 11 U.S.C. §523(a)(4). The debt at issue consists of monies that Halpin Mechanical & Electric, Inc. ("HM&E"), by and through William C. Halpin, Jr.,

---

    [1] For printed publication by the Federal Reporters.

    [2] The funds at issue here are the I.B.E.W. Pension Plan, the Annuity Fund and Plan, the Apprenticeship Training Fund, and the National Electrical Benefit Fund.

1

in his capacity as president of HM&E, was obligated to contribute towards the Benefit Funds. Order (Dkt. No. 4, Attach. 2) at 2.[3]  Appellee failed to remit contributions from July 2002 through January 2003, resulting in a total amount due of $44,452.24.  Id.  Plaintiffs seek to offset the debt, pursuant to 11 U.S.C. §553(a), with the Debtor-Appellee William C. Halpin, Jr.'s ("Appellee") annuity and pension benefits, amounts claimed by Appellee to be exempt from his bankruptcy estate.

Plaintiff-Appellants allege that Appellee bears personal liability for the contributions owed to the Benefit Funds on the grounds that his mishandling of the funds was a breach of fiduciary duty.  Plaintiff-Appellant's Brief (Dkt. No. 10) at 9**;** see also 29 U.S.C. §1109(a).  An individual's liability "for fraud or defalcation while acting in a fiduciary capacity" is non-dischargeable in bankruptcy.  See 11 U.S.C. § 523(a)(4).  Accordingly, Plaintiff-Appellants seek findings that 1) Appellee was a fiduciary of the plan, 2) the contributions had become plan assets while they were under Appellee's control, and 3) Appellee's handling of the assets constituted a breach of fiduciary duty.  Hon. Robert E. Littlefield, Jr., United States Bankruptcy Judge, noting that these issues are inter-connected, determined that Plaintiff-Appellants had not shown that the contributions were plan assets and that Appellee was not, therefore, a fiduciary, since he did not have control or authority over any funds that were plan assets.  Order (Dkt. No. 4, Attach. 2) at 11-12.

Additionally, Judge Littlefield found that Plaintiff-Appellants were not entitled to offset Appellee's liability with his annuity and pension funds, on the grounds that the right to setoff only overrides a debtor's claimed exemptions if the debtor had breached a fiduciary duty to the fund. Order (Dkt. No. 4, Attach. 2) at 13-14.  Since the Court had already determined that Appellee did

---

[3] All references to the Docket refer to Case No. 1:06-CV-1034, unless otherwise noted.

not have a fiduciary duty, setoff was unavailable. Id.

## II. Discussion

A.     Standard of Review

In reviewing a decision from the Bankruptcy Court, this court accepts all factual findings, unless clearly erroneous, but reviews all conclusions of law *de novo*. See In re Ionosphere Clubs, Inc. 922 F.2d 984, 988-989 (2d Cir. 1990). As the parties and the Bankruptcy Court agreed that there were no triable issues of fact, the findings in the decision are entirely legal conclusions, and will be reviewed de *novo*. See Order (Dkt. No. 4., Attach. 2) at 3.

B.     Fraud or Defalcation While Acting in a Fiduciary Capacity

Under 11 U.S.C. § 523, an individual debtor is not discharged from a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Plaintiff-Appellants claim that HM& E's unremitted contributions qualify under that statute because Appellee misappropriated the funds, while he was acting in a fiduciary capacity. Appellee denies the unpaid contributions became plan assets before they were transmitted; he asserts that his possession of those monies did not constitute control over plan assets or give rise to fiduciary responsibilities. Plaintiff-Appellants bear the burden of proving the elements of non-dischargeability by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991).

A person is a fiduciary of a benefit plan under ERISA:

> "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation..., or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

29 U.S.C. § 1002 (21)(A).

This test is functional, rather than formal, meaning that a person's responsibilities and actions with regard to plan assets, not her title, determines whether she is a plan fiduciary. Blatt v. Marshall & Lassman, 812 F.2d 810, 812 (2d Cir. 1987). "An entity need only have 'sufficient control over at least a part of the [plan] assets to create a fiduciary relationship.'" Trs. of Conn. Pipe Trades Local 777 Health Fund v. Nettleton Mech. Contractors, 478 F. Supp. 2d 279, 282 (D. Conn. 2007) (quoting United States v. Glick,142 F.3d 520, 527 (2d Cir. 1998). Judge Littlefield determined that the employee benefit fund contributions at issue did not become plan assets when due, so Appellee never had any authority or control over the management or disposition of plan assets. Order (Dkt. No. 4, Attach. 2) at 11-12. Accordingly, the Court below found that Appellee was not a plan fiduciary. Id.

        1.     Status of Unpaid Contributions

The Bankruptcy Court found that, in the Second Circuit, "the question of when an employer's contribution becomes an 'asset' of a plan must be determined by reference to the rights and obligations created by the underlying wage agreement." Order (Dkt. No. 4, Attach. 2) at 7 (quoting U.S. v. Panepinto, 818 F. Supp. 48 (E.D.N.Y. 1993)); see also 29 U.S.C. § 1145 (2007). The Bankruptcy Court, after analyzing the collective bargaining agreement ("CBA"), determined that the language in the CBA does not define when a contribution becomes a plan asset, but implies instead that the contributions are contractual payment obligations. Id. at 8-9. Plaintiff-Appellants argue that the Bankruptcy Court used a narrow approach to the plan asset issue, requiring specific language identifying the unpaid contributions as plan assets, and that this approach is not in line with the approach favored by the Second Circuit. Plntf's Reply (Dkt. No. 18) at 1.

     a.  Contractual Interpretation

The proper interpretation of a contract is a question of law. Morse/Diesel, Inc. v. Trinity Industries, Inc., 67 F.3d 435, 439 (2d Cir. 1995). Article VI of the CBA describes employer contributions to the benefit funds, but does not explicitly state when such contributions become fund assets. CBA (Dkt. No. 4, Ex. A) at §§ 6.01-13. The CBA describes employer payments as "a debt due and owing the [Benefit Fund] on the last day of each calendar month." Id. at § 6.01. Additionally, the CBA outlines the consequences for failure to make the required contributions: an employer who fails to remit funds due is subject to having his agreement terminated for breach and is liable for the delinquent amount plus fees and/or interest. Id. at §§ 6.01, 6.07, 6.10-12, 6.14. These terms do not indicate that the unpaid contributions become assets of the plan before being turned over. Instead, the terms imply that the unpaid employer contributions are contractually due payments. This conclusion is supported by the language of the "Agreement and Declaration of Trust," which describes the assets of the Fund as including "contributions made by the Employers," in contrast to those payments not yet made by an employer. See Appellee's Brief (Dkt. No. 15) at 15; Agreement and Declaration of Trust (Dkt. No. 7 of 1:06-CV-1097-LEK, Attach. 3, Ex. 2) at 3.

     b.  When do funds become plan assets in the absence of explicit language?

It is true, as Plaintiffs argue, that courts in the Second Circuit have not required specific language in the CBA, before unpaid contributions can be considered to be plan assets. See United States v. Panepinto, 818 F. Supp. 48, 51 (E.D.N.Y. 1993) (declining to find that withheld employer contributions can *only* be considered assets if the CBA uses the word vested). However, it does not follow that unpaid contributions are presumptively plan assets. See Tr. of Conn. Pipe Trades Local

777 Health Fund, 478 F. Supp. 2d at 283 (citing Tr. of the S. Cal. Pipe Trades Health and Welfare Trust Fund v. Temecula Mech., Inc., 438 F. Supp. 2d 1156, 1163 (C.D. Cal. 2006) for the "general rule that contributions do not become plan assets until paid to the plan" except if established otherwise in plan documents).

Plaintiffs rely upon several cases to establish that unpaid employer contributions are, as a default, plan assets. Each of these cases are distinguishable.[4] In United States v. Panepinto, the United States District Court for the Eastern District of New York found that unpaid employer contributions were plan assets, in the context of a criminal embezzlement case. 818 F. Supp. at 51. However, the Panepinto Court's finding that unpaid contributions were assets was based on the language of the underlying wage agreement, which had "no lack of clarity" on that point. Id. Other cases relied on by Plaintiffs, United States v. Glick, 142 F.3d 520 (2d Cir. 1998) and LoPresti v. Terwilliger, 126 F.3d 34 (2d Cir. 1997), are distinguishable in that they discuss *employee* contributions, rather than those which originate with the employer. The source of the funds carries a significant legal difference. Employee contributions are held in trust by an employer, until they are paid to a benefit plan; the Department of Labor has established guidelines for when those funds become plan assets under ERISA. DOL Regulation Relating to Definition of "Plan Assets"–Participant Contributions, 29 C.F.R. pt. 2510 (1996); Tess J. Ferrera, *When Do Assets Become "Plan Assets" Under the New Employee Contribution Rules?*, 4 J. Tax'n Employee Benefits 163, 164 (1996). For this reason, cases concerning employee contributions have no bearing

---

[4] The Bankruptcy Court distinguished the cases relied upon by Plaintiff because the defendants in those cases "took a very active and often illegal role" in diverting funds, which was not shown in this case. Order (Dkt. No. 4, Attach. 2) at 11. This Court disagrees with those grounds for distinction but reaches the same result, for the reasons laid out on this page.

on the issue before the Court.

As described above, neither the caselaw nor the plan documents support Plaintiff-Appellants' claim that the unpaid employer contributions were plan assets.

        2.        Does Appellee have Fiduciary Status and Personal Liability with Regard to Benefit Plan Assets?

For Appellee to bear the responsibilities of a fiduciary, including personal liability for any losses stemming from a breach of his duty, he must have authority over the management or disposition of plan assets.  29 U.S.C. §§ 1002, 1109.  Since Plaintiff-Appellants have not shown that the unpaid employer contributions were plan assets, they have also not shown that Appellee had fiduciary responsibilities over those assets.  However, the facts agreed upon by the parties establish that Appellee had fiduciary control over contributions to the Benefit Fund withheld from employee pay.  Appellee's Brief (Dkt. No. 15) at 4 (admitting that the withheld money "belonged to the union and, as such, constituted 'plan assets' the moment that HM&E withheld the same from union laborer/worker wages").

Nevertheless, Appellee's fiduciary status over some plan assets does not establish his fiduciary responsibilities with regard to all plan assets.  "[A] person may be an ERISA fiduciary with respect to certain matters but not others, for he has that status only 'to the extent' that he has or exercises the described authority or responsibility."  Harris Trust and Sav. Bank v. John Hancock Mut. Life Ins. Co., 302 F.3d 18, 28 (2d Cir. 2002) (quoting F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d 1250, 1259 (2d Cir.1987).  "The personal liability of a fiduciary who is not a named fiduciary is generally limited to the fiduciary functions, which he or she performs with respect to the plan."  Questions and Answers Relating to Fiduciary Responsibility under ERISA, 29 C.F.R. §

2509.75-8 (1999) (quoted in NYSA-ILA Med. & Clinical Servs. Fund v. Catucci, 60 F. Supp. 2d 194, 201-202 (S.D.N.Y.1999)).

Appellee admits that he breached his fiduciary duty in relation to the contributions withheld from employee wages. Appellee's Brief (Dkt. No.15) at 4 ("we would agree that the Appellee is personally responsible, as the corporate officer charged with such trust proceeds accountability here, for the requisite fiscal shortfall and deficiency."). However, the parties have reached a separate resolution of those debts and they are not at issue before this Court. Order (Dkt No. 4, Attach. 2) at 6; Joint Stip. of Facts (Dkt. 4, Attach.1) at ¶12. As for the unpaid employer contributions, they are not plan assets, so Appellee cannot bear fiduciary responsibilities to the plan with regard to that money. The personal liability of a breaching fiduciary only attaches "to make good...any losses to the plan resulting from each such breach." 29 U.S.C. § 1109. Additionally, section 523 makes a debt nondischargeable only if it was "for fraud or defalcation while acting in a fiduciary capacity," so only Appellee's debts accrued while acting in a fiduciary capacity could fall under this statute. 11 U.S.C. § 523(a). Because Appellee's failure to make the required contributions was not a breach of fiduciary responsibility, neither section applies; Appellee is not a fiduciary, bears no personal liability for the unpaid contributions, and the debt is dischargeable.

C. Availability of Offset.

The policies of the Bankruptcy Act and the Second Circuit favor allowing setoff. Bohack Corp. v. Borden, Inc., 599 F.2d 1160, 1165 (2d Cir. 1979); In re Bennett Funding Group, Inc., 146 F.3d 136, 138-9 (2d Cir. 1998). However, for an offset to apply, there must be "a mutual debt" between creditor and debtor. 11 U.S.C. § 553(a). The debt owed to the Benefit Fund is not owed by Appellee, but by HM&E. Since Appellee was found not to be a fiduciary and not to bear personal

liability, Plaintiff-Appellants do not hold a valid claim against Appellee based on the unpaid employer contributions. Accordingly, offset is unavailable.

### III. Conclusion

Based on the foregoing discussion, it is hereby

**ORDERED**, that the July 26, 2006 Order of the Bankruptcy Court (Littlefield, B.J.) (Dkt. No. 4, Attach.2) is **AFFIRMED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:    June 07, 2007
          Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge